Dwight L. LIEB, Appellant,

v.

ROMAN DEVELOPMENT COMPANY
and Jewel Foliage Company,
Appellees.

No. 13–86–090–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Sept. 30, 1986.

Joyce M. Palmer, C. Charles Dippel, Sears & Burns, Houston, for appellant.

Susan Reed, Suzanne Langford Sanford, and Luther H. Soules, III, Soules, Cliffe & Reed, Gerald T. Drought, San Antonio, for appellees.

Before KENNEDY, UTTER and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

Appellant sought specific performance

on a contract for real estate.[1] Appellees moved for an instructed verdict against appellant's claim for specific performance. The trial court granted the instructed verdict and ordered that appellant take nothing by his suit and denied specific performance of the contract. Appellant brings twenty points of error. We affirm the judgment of the trial court. Hereafter, we will refer to appellant as purchaser and appellees as seller.

The parties executed an earnest money contract in April of 1982 which provided:

> Seller agrees to sell property at said price and to convey or cause to be conveyed to Purchaser a good merchantable title thereto by General Warranty Deed free and clear of any liens or encumbrances except as above provided.

The original closing date was August 9, 1982. Purchaser negotiated to have the closing date extended until September 8, 1982, by depositing additional earnest money in the sum of $3,000.00. The contract also provided that, if there was an objection to title, the sale would be closed when the objections were removed. Paragraph six of the contract provided:

> Seller acknowledges that Purchaser intends to develop a commercial building on subject property, and if Purchaser determines he cannot so use the property, then at any time during the existence of this contract, Purchaser shall have the right to terminate this contract, and the contract shall thereupon cease and be of no further force and effect and the earnest money shall be delivered to the seller.

The contract concerned the West 2.31 acres of Lot 27. Seller, prior to the execution of this contract, leased a portion of Lot 27. The leased portion of Lot 27 mainly consisted of acreage east of the 2.31 acres contemplated in the sale. However, the lease also included a small strip of land within the 2.31 acres purchaser sought to buy. The tenant erected a chain link fence around the leased property prior to this contract. A survey of the property performed in conjunction with this contract revealed that the chain link fence actually extended a little beyond the leased acreage.

Lot 27

West 2.31 acres

.... - chain link fence.

Purchaser objected to the state of title, claiming the fence and lease constituted an encumbrance preventing the passage of good merchantable title. Seller attempted to purchase the lease with regard to the leased property extending into Lot 27. These negotiations became futile due to the tenant's demands as to the amount needed to purchase the leased property.

Neither party attempted to close on September 8th, the closing date, and it appears seller's negotiations with the tenant expanded beyond this time frame. Due to seller's inability to bargain with the tenant, purchaser was informed that seller would close "as is." "As is" refers to the property being deeded with the lease, and fence surrounding the leased property, in place.

1. The parties pleaded other causes of action, cross-claims, and third party-claims which were either dismissed or non-suited and are not an issue on appeal.

Purchaser continued to object that seller was not transferring good merchantable title as the contract requires. Forty-six days after the September 8th closing date seller wrote purchaser and terminated the contract due to purchaser's refusal to take the property with the lease and fence. This suit then followed.

Purchaser, in his first fifteen points of error and point of error number seventeen, complains that the trial court erred in failing to render judgment of specific performance in favor of purchaser. The parties do not dispute the facts, but merely the effect of the lease and the fence on the state of title. When there is no ambiguity in a contract, the construction of the written instrument is a question of law for the court. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962); *Corpus Christi National Bank v. Lowry*, 662 S.W.2d 402, 405 (Tex. App.—Corpus Christi 1983, no writ); *see Trinity Universal Insurance Co. v. Ponsford Brothers*, 423 S.W.2d 571, 575 (Tex. 1968).

Purchaser contends that the lease and the fence constitute an encumbrance upon title, and that, under the contract, the closing date was to be extended until the objections were removed.

■ Merchantable title is synonymous with marketable title. *See Lund v. Emerson*, 204 S.W.2d 639, 641 (Tex.Civ.App.— Amarillo 1947, no writ); *O'Meara v. Saunders*, 199 S.W.2d 689, 692 (Tex.Civ.App.— San Antonio 1946, writ ref'd n.r.e.). Merchantable/marketable title means a title free and clear from reasonable doubt as to matters of law and fact, i.e., not clouded by any outstanding contract, covenant, interest, lien, or mortgage sufficient to form a basis of litigation. *Ryan Mortgage Investors v. Fleming-Wood*, 650 S.W.2d 928, 936 (Tex.App.—Fort Worth 1983, writ ref'd n.r. e.).

■ The Supreme Court, in *Liedeker v. Grossman*, 146 Tex. 308, 206 S.W.2d 232, 234 (1947), stated:

Possession of property by a tenant at the time a contract of sale is executed, or at the time the premises are conveyed, puts the prospective purchaser or vendee on notice of the terms of the lease under which the tenant is holding; and this role applies notwithstanding the fact that the lease contract is not recorded.

The lease is not an objection to title, and the vendee must respect the previous lease and proceed to closing. *See Liedeker v. Grossman*, 206 S.W.2d at 234.

■ Purchaser also argues that the portion of the fence that extends beyond the acreage covered in the lease constitutes an encroachment that is an objection to the title under the contract. That portion of the fence beyond the leased property constitutes an encroachment, but is not an objection to title. The doctrine of encroachment applies here. Where a small portion of land is mistakenly subjected to a use beyond the leased property, the tenant, as a matter of law, has no basis for acquiring that property. *Southland Paper Mills, Inc. v. McGathon*, 473 S.W.2d 294, 298 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.); *Smith v. Temple Lumber Co.*, 323 S.W.2d 172, 174–75 (Tex.Civ.App.— Beaumont 1959, writ ref'd n.r.e.). The encroachment does not constitute an objection to title under the contract; it is not a cloud upon title by an outstanding contract, covenant, interest, lien, or mortgage sufficient to form a basis of litigation.

■ Purchaser raised for the first time at trial that the deed of trust, executed by appellees on the contested property, constitutes an objection to title. A purchaser of land who complains of specific defects in title as his only reason for rejecting it and refusing to pay cannot set up other defects as a defense, if those other defects could and would have been cured by the buyer at closing. *Schriewer v. Liedtke*, 561 S.W.2d 584, 588 (Tex.Civ.App.—Beaumont 1978, writ dism'd); *see O'Meara*, 199 S.W.2d at 692.

■ Seller made an offer of a deed which complied with the contract. Based upon purchaser's refusal to accept the

deed, seller properly terminated the contract, and the contract was no longer binding upon seller. *See Smith v. Nash,* 571 S.W.2d 372, 375–76 (Tex.Civ.App.—Texarkana 1978, no writ); *Helsley v. Anderson,* 519 S.W.2d 130, 133 (Tex.Civ.App.—Dallas 1975, no writ). We overrule purchaser's first fifteen points of error and point of error number seventeen.

Purchaser, by his sixteenth point of error, complains that the trial court erred in excluding from evidence the deed of trust executed by seller over the property and the release executed by the mortgagor. Having already determined that purchaser failed to raise the existence of a lien in a timely fashion, there was no error by the trial court in excluding that evidence. We overrule purchaser's sixteenth point of error.

Purchaser, by his eighteenth, nineteenth, and twentieth points of error, complains of the award of attorney's fees pursuant to a stipulation entered into by the parties. However, these points of error are conditioned on a reversal of the trial court's judgment that purchaser be denied specific performance. Having determined that there was no error at the trial level, we need not address these points of error. *See* TEX.R.CIV.P. 451.

The judgment of the trial court is AFFIRMED.